## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | | |
|---|---|---|---|
| 1. | **ALLISON B. BROWN,** | ) | |
| | | ) | |
| | **Plaintiff,** | ) | |
| **v.** | | ) | **CIV-22-917-D** |
| | | ) | |
| 1. | **DYNAMIC GAMING** | ) | |
| | **SOLUTIONS, LLC,** | ) | |
| 2. | **MARK LARSON, and** | ) | |
| 3. | **TRAVIS SKAGGS,** | ) | |
| | | ) | **JURY TRIAL DEMANDED** |
| | **Defendants.** | ) | **ATTORNEYS LIEN CLAIMED** |

## COMPLAINT

**COMES NOW** the Plaintiff, Allison B. Brown, and for her Complaint against the Defendants, alleges and states as follows:

## PARTIES

1.      Plaintiff, Allison B. Brown, is an adult female resident of Cleveland County, Oklahoma.

2.      Defendants are:

a.      Dynamic Gaming Solutions, LLC ("Dynamic"), an entity doing business in and around Oklahoma County, Oklahoma;

b.      Mark Larson ("Larson"), an individual who at all relevant times hereto was employed as the Chief Executive Officer with Dynamic; and

c.      Travis Skaggs ("Skaggs"), an individual who at all relevant times hereto was employed as the Operations Manager with Dynamic.

-1-

## JURISDICTION AND VENUE

3.     This is a cause of action arising out of Plaintiff's former employment with Defendant Dynamic and is based on the following claims: (a) disability discrimination and retaliation for having requested reasonable accommodations in violation of the Americans with Disabilities Act ("ADA") and ADA Amendments Act ("ADAAA"); (b) violations of the Fair Labor Standards Act ("FLSA"); (c) gender discrimination and retaliation for having engaged in protected opposition to gender discrimination in violation of Title VII of the Civil Rights Act; (d) wrongful discharge in the form of a *Burk* tort  in violation of Oklahoma state law which prohibits terminating an employee for exercising a legal right or interest; (e) tortious interference with a contractual/employment relationship; (f) tortious interference with a prospective business advantage; and (g) violation of the Oklahoma Protection of Labor Act ("OPLA").

4.     Jurisdiction over Plaintiff's federal causes of action is vested in this Court under 28 U.S.C. §1331.   This Court has supplemental jurisdiction over Plaintiff's corresponding state law claims as they arise out of the same core of operative facts as the federal claims and jurisdiction over them is vested in this Court under 28 U.S.C. §1367(a).

5.     To the extent required, Plaintiff has exhausted her administrative remedies as to the above-listed claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about December 6, 2021.  Plaintiff also dually filed her Charge with the Oklahoma Office of Civil Rights Enforcement.  Plaintiff subsequently received a Dismissal and Notice of Rights letter dated September 28, 2022.

This case is timely filed within ninety (90) days of Plaintiff's receipt of her right to sue letter.

6.       All acts complained of herein occurred in or around Oklahoma County, Oklahoma. Oklahoma County is located within the Western District of the United States District Court of Oklahoma.  Thus, venue is proper in this Court under 28 U.S.C. §1391(b).

## STATEMENT OF FACTS

7.       Plaintiff, Allison B. Brown, an adult female, was employed with Dynamic for approximately one (1) year.

8.       She began her employment in or around September 2020, as a contract worker.

9.       After a period of about six (6) months, on or about March 1, 2021, Operations Manager Travis Skaggs emailed Plaintiff with a letter from Chief Executive Officer Mark Larson, outlining Plaintiff's full-time position with Dynamic as an Administrative Assistant.

10.       Pursuant to Larson's offer letter, as an Administrative Assistant, Plaintiff's job duties were listed as: (1) assist with coordination on all Accounts Receivable/Accounts Payable needs; (2) assist with monthly auditing and reconciliations; and (3) assist Accountant Paul Moen with other job functions as he requests.

11.       As of March 28, 2021, Plaintiff was no longer a contract worker, but was designated a full-time employee of Dynamic.

12.       During her employment, Plaintiff was a qualified individual with a disability within the meaning of the Americans with Disabilities Act ("ADA") and ADA Amendments Act ("ADAAA"), in that, Plaintiff suffered/suffers from migraine headaches, which substantially impair her ability to perform one or more major life activities, including *inter*

*alia* her ability to think, see, eat and concentrate.  Her impairment also substantially impacts her internal bodily processes, including *inter alia* her neurological and visual systems.

13.     Plaintiff also has a record of such impairment and/or was regarded as having such impairment.  At all relevant times though, Plaintiff was able to perform the essential functions of her job with or without reasonable accommodations.

14.     In fact, throughout her employment, Plaintiff was recognized as an excellent employee and was not written up.

15.     Her former immediate supervisor, Accountant and CPA Paul Moen, praised her performance and often told Plaintiff he was talking to CEO Mark Larson about promoting her and giving her a pay raise.

16.     In or around July 2021, during Moen's conversations with Plaintiff, Moen informed Plaintiff that when she received her promotion, it would include a $10,000 increase in pay (which Moen said had already been approved).

17.     Consistent with this, on or about Friday, September 24, 2021, Moen and Neal Remmers (who was transitioning in as Moen's replacement), told Plaintiff she was being promoted from an Administrative Assistant to an Accounting Specialist.

18.     Based on her discussions about the new role, Plaintiff understood she would be performing the same duties as before, as well as adding a few additional tasks, including analyzing monthly slot machine reports (to access income received from the machines) and preparing electronic reports submitted to the Oklahoma Tax Commission.

19.     However, Moen and Remmers informed Plaintiff that she would only receive

a $7,000 salary increase, rather than the $10,000 she was previously promised.

20.    When Plaintiff shared her surprise at being offered less pay than what Moen previously told her had been approved, Moen said he "fe[lt] terrible" about it.

21.    During the conversation, Remmers also told Plaintiff that she would need to extend her work hours in her new role from 7:30 a.m to 5:30 p.m., as opposed to the regular business hours she had been working of 8:00 a.m. to 5:00 p.m.

22.    During the conversation with Moen and Remmers on or about September 24, 2021, Plaintiff expressed her concern that she was being treated less favorably than her male co-workers.  For instance, Plaintiff expressed her concern that her male colleagues were allowed to leave work at 5:00 p.m.  She also expressed concern that she was not compensated for mileage or fuel for running work-related errands, whereas her male colleagues were afforded such benefit.

23.    Moen agreed there was "different treatment."

24.    Over the weekend that followed (September 25-26, 2021), Plaintiff shared the news of her promotion with a family member, who also happens to be a Human Resources professional.

25.    During the course of the conversation, an issue arose as to whether Plaintiff was properly designated as a salaried/exempt employee.

26.    Particularly, for the period from March 28, 2021 to September 24, 2021, Plaintiff consistently worked in excess of forty (40) hours per week.  She often worked through lunch, as well as some time beyond 5:00 p.m.  She regularly worked forty-two (42)

or more hours per week.  And, with the extended work hours she would be required to work in her new role, the overtime would only increase.

27.    Therefore, on Monday, September 27, 2021, Plaintiff told Moen that she felt she should not be designated as exempt and that she should have been (and should be moving forward) eligible for overtime compensation throughout her employment.

28.    Moen expressed a misunderstanding concerning the terms "exempt" and "non-exempt," stating he would "research it" and would discuss the issue with Operations Manager Skaggs later that day.

29.    Later that morning of September 27, 2021, Plaintiff also reported her concern to Remmers that Dynamic was engaging in conduct that appeared to be tax evasion, in that, Dynamic was not paying required sales tax.

30.    Plaintiff explained that in or around April 2021, when reviewing invoices, Plaintiff noticed that some invoices included sales tax while others did not.  Plaintiff talked to Moen about this at the time, who told Plaintiff that he believed Dynamic was committing tax evasion.  Moen told Plaintiff that he had previously talked to Larson about the issue, but that Larson instructed Moen to continue as he had (not paying sales tax).

31.    This issue arose again in or around mid-September 2021, when Moen told Plaintiff that Remmers had agreed that it appeared Dynamic was engaging in tax evasion.

32.    Upon telling Remmers this on or about September 27, 2021, Remmers said Defendant Dynamic was tax exempt on games leased to tribal casinos.  However, this was inconsistent with Moen's prior comments to Plaintiff, including a comment just a few weeks

before addressing the conversation between Moen and Remmers.

33.     Plaintiff raised this issue with Remmers on or about September 27, 2021, because she was particularly concerned that she could potentially be subject to criminal liability, given her understanding that in her new role, her responsibilities would include submitting reports to the Oklahoma Tax Commission, affirming the accuracy of taxes being paid by Dynamic.

34.     That afternoon of September 27, 2021, Plaintiff began suffering from a severe migraine while at work.  Therefore, she asked Remmers for a reasonable accommodation in the form of leaving work early.  Remmers responded, of course, and told Plaintiff that he hoped she got to feeling better.

35.     Plaintiff had accrued, unused leave time to cover her time off.  She left work at around 2:00 p.m. on or about September 27, 2021.

36.     The next day, on or about Tuesday, September 28, 2021, Plaintiff was fired.

37.     When she arrived at work that morning, she was locked out of her computer.  She was then called to meet with Skaggs and Compliance Manager Bentleigh Albert.

38.     During the meeting, Skaggs said Plaintiff was being fired because she left early from work the day before.  Skaggs also accused Plaintiff of being "disgruntled" about her pay.

39.     However, Plaintiff had permission to leave work early the day before.  She also had accrued, unused leave time to cover her few hours missed time from work.  And, Dynamic had a progressive disciplinary policy that was not followed in terminating Plaintiff,

as she had not been written up at any time prior to her termination.

40.     Upon information and belief, Larson and Skaggs made the decision to terminate Plaintiff's employment, knowing her complaints of unlawful activity (i.e., Plaintiff's reported violations of the FLSA, tax evasion and gender discrimination).

41.     Further, Defendant Dynamic failed to pay Plaintiff regular and overtime compensation for hours she worked in excess of forty (40) hours per week during her employment.

42.     Plaintiff regularly worked over forty (40) hours per week, often working during the lunch hour, as well as beyond the close of business.  However, Plaintiff was not paid any overtime compensation for hours she worked beyond forty (40) hours per week.  And, Plaintiff was not permitted to clock in and out from work.

43.     This was so despite the fact that Plaintiff did not hold a bona fide executive, professional, administrative, outside sales or other position exempting her from the overtime provisions of the FLSA.  Plaintiff did not have any managerial responsibilities, nor was she authorized to use discretion or independent judgment in carrying out her role.  Defendants improperly treated Plaintiff as an exempt employee.

44.     At the time of her termination, Skaggs offered Plaintiff a severance agreement, whereby Plaintiff would be paid a sum of money in exchange for a release of claims, including *inter alia* claims under Title VII, the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), and other state and federal laws.

45.     Plaintiff declined to sign the agreement.

46.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered injuries described hereafter.

## COUNT I:  ADA/ADAAA

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

47.     This Count is asserted against Defendant Dynamic.

48.     The matters alleged above constitute discrimination based on a disability, record of a disability and/or perceived disability in violation of the ADA and ADAAA.  The matters alleged above also constitute retaliation for having requested reasonable accommodations in violation of the ADA and ADAAA.

49.     More specifically, Plaintiff was a qualified individual with a disability, in that, she suffers from an impairment which substantially limits her ability to perform one or more major life activities.  Further, Plaintiff's disability impacts one or more of her internal bodily processes as shown herein.  And, Plaintiff had a record of a disability and was regarded as disabled.

50.     Despite said impairment, Plaintiff was qualified to perform the essential functions of her job with or without reasonable accommodations at all relevant times hereto.

51.     Plaintiff was terminated under circumstances giving rise to an inference of discrimination.

52.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory

damages as allowed by the Civil Rights Act of 1991.

53.     Because the actions of Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT II: FLSA VIOLATIONS

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

54.     This Count is asserted against all Defendants.

55.     The matters described above constitute violations of the Fair Labor Standards Act ("FLSA") in the form of misclassification, failure to pay overtime compensation and retaliation.

56.     Plaintiff was not employed in a bona fide executive, professional, administrative, outside sales or other position exempting her from the overtime provisions of the FLSA.  Plaintiff did not have any managerial responsibilities, nor was she authorized to use discretion or independent judgment in carrying out her duties.  Defendants improperly treated Plaintiff as an exempt employee.

57.     Defendants' failure to provide Plaintiff regular compensation, as well as overtime compensation at a rate not less than one and one-half her regular rate for hours worked over forty (40) hours in a workweek constitutes a violation of the FLSA, 29 U.S.C. §207.

58.     By failing to accurately record, report and/or preserve records of all hours worked by Plaintiff, Defendants failed to make, keep and preserve records with respect to

each of its employees sufficient to determine their wages, hours and other conditions and practices of employment in violation of the FLSA.

59.     Plaintiff is also entitled to relief because she engaged in protected activity (i.e., complaining that she was being improperly treated as an exempt employee, not being paid regular and overtime compensation for hours she worked over forty (40) hours in a workweek); Defendants terminated her employment, and a causal connection between her termination and protected activity exists.

60.     Defendants' violations of the FLSA were knowing and willful.

61.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered a loss of income and other damages.  As such, Plaintiff is entitled to recover unpaid wages (including unpaid regular and overtime wages), liquidated damages, attorneys' fees costs incurred in connection with this claim and such other legal and equitable relief as this Court deems just and proper.

## COUNT III: Title VII (GENDER)

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

62.     This Count is asserted against Defendant Dynamic.

63.     The matters alleged above constitute violations of Title VII of the Civil Rights Act of 1964 in the nature of gender discrimination and retaliation.

64.     Plaintiff is entitled to relief under Title VII for gender discrimination because, Plaintiff is female; she was qualified for her job; she was terminated; and her job was not

eliminated.

65.     Plaintiff is also entitled to relief under Title VII for retaliation because Plaintiff engaged in protected opposition to sex-based discrimination; she suffered an adverse action subsequent to the protected activity; and a causal link exists between the protected activity and the adverse action.

66.     As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by law.

67.     Because the actions of Defendant were willful, wanton or, at least, in reckless disregard of Plaintiff's rights, Plaintiff is also entitled to punitive damages.

## COUNT IV: *Burk* Tort

For her fourth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

68.     This Count is asserted against Defendant Dynamic.

69.     The acts described above constitute a violation of Oklahoma's public policy, which prohibits wrongful termination and retaliation against whistle-blowers for performing an act consistent with a clear and compelling public policy, i.e., refusing to participate in an illegal activity; performing an important public obligation; exercising a legal right or interest; exposing some wrongdoing by the employer; and performing an act that public policy would encourage or, for refusing to do something that public policy would condemn.

70.     More particularly, Plaintiff was wrongfully discharged from her employment in retaliation having acted consistently with a clear and compelling public policy by *inter*

*alia* performing an act that public policy would encourage (i.e., complaining of tax evasion) and refusing to participate in illegal activity.  *See* Okla. Stat. tit. 68 § 246 (making the verification of any false report to the Oklahoma Tax Commission a felony); *Booth v. Home Depot, U.S.A., Inc.*, 504 P.3d 1153, 156 (Okla. 2022) ("A policy to protect public funds from theft, thus protecting the public welfare, is within the narrow exception to the at-will doctrine established in *Burk*.").

71.     Plaintiff has suffered injuries and is entitled to recover all damages or other relief allowed by state law, including, but not limited to, lost wages (past and future), emotional distress damages, costs and attorney's fees.

## COUNT V: Tortious Interference

For her fifth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

72.     This count is asserted against Defendants Larson and Skaggs.

73.     The acts described above constitute unlawful tortious interference with a contractual/employment relationship.  Defendants' actions interfered with a business or contractual right; were malicious and wrongful and not justified, privileged, or excusable; and (3) caused damage to Plaintiff.

74.     Defendants  Larson and Skaggs knew or should have known of Plaintiff's employment relationship and expectancy of continued employment with Dynamic at the time they wrongfully terminated Plaintiff's employment based on the unlawful grounds set forth above.

75.     Defendants Larson and Skaggs were not acting to serve any legitimate or lawful interest of Dynamic, but were pursuing their own motives which included hostility toward Plaintiff due to personal disregard for Plaintiff's state and federally protected rights.

76.     As a result, Plaintiff is entitled to all damages allowed by Oklahoma state law.

77.     Moreover, because the actions of Defendants were willful, wanton or in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT VI: Interference with Prospective Economic Advantage

For her sixth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

78.     This count is asserted against Defendants Larson and Skaggs.

79.     The acts described above constitute unlawful interference with Plaintiff's prospective economic advantage.

80.     Plaintiff had a valid business relationship or expectancy with Dynamic.

81.     Defendants Larson and Skaggs had knowledge of Plaintiff's business relationship.

82.     Defendants Larson and Skaggs intentionally interfered with Plaintiff's business relationship with Dynamic by terminating her employment.

83.     Such a breach resulted in damage to Plaintiff.

84.     As a result, Plaintiff is entitled to all damages allowed by Oklahoma state law.

85.     Moreover, because the actions of Defendants were willful, wanton or in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT VII: OPLA VIOLATIONS

For her seventh cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

86.     This count is asserted against Defendant Dynamic.

87.     The matters described above constitute a violation of the OPLA, Okla. Stat. tit. 40 §165.1.

88.     Defendant Dynamic is an employer as defined in the OPLA, Okla. Stat. tit. 40 §165.1.

89.     Under the OPLA, Okla. Stat. tit. 40 §§165.1 and 165.2, employers must pay employees all wages, defined to include compensation owed for labor and services rendered, including overtime pay, at least twice each calendar month on regular paydays.

90.     Defendant Dynamic violated the OPLA by failing to pay Plaintiff regular and overtime compensation for hours worked over forty (40) hours per week.

91.     Defendant's violation of the OPLA was knowing and willful.

92.     As a result of Defendant's unlawful conduct, Plaintiff has been damaged.

93.     As such, Plaintiff is entitled to all damages provided for by law, including recovery of unpaid wages, liquidated damages, costs and attorneys' fees pursuant to the OPLA, Okla. Stat. tit. 40 §§165.3 and 165.9.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendant and assess lost wages, including back pay and front pay, actual,

compensatory, emotional distress damages, liquidated and punitive damages, together with pre- and post-judgment interest, costs, attorney's fees, all other damages available under federal and Oklahoma state law, and such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 25TH DAY OF OCTOBER, 2022.**

s/ *Jana B. Leonard*
**JANA B. LEONARD, OBA# 17844**
**SHANNON C. HAUPT, OBA #18922**
**LEONARD & ASSOCIATES, P.L.L.C.**
**8265 S. WALKER**
**OKLAHOMA CITY, OK 73139**
**(405) 239-3800       (telephone)**
**(405) 239-3801       (facsimile)**
**leonardjb@leonardlaw.net**
**haupts@leonardlaw.net**

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**