IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ALLISON B. BROWN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CIV-22-917-D |
| DYNAMIC GAMING SOLUTIONS, LLC, *et al.*, | ) ) ) ) |
| Defendants. | ) ) |

**O R D E R**

Before the Court is Plaintiff's Motion for Partial Summary Judgment [Doc. No. 32] under Fed. R. Civ. P. 56. Plaintiff seeks a judgment in her favor on four claims related to the termination of her employment, leaving unresolved four other claims and an award of damages. The Motion addresses the following theories of recovery: a retaliation claim against all defendants under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 513(a); a wrongful discharge claim against Defendant Dynamic Gaming Solutions, LLC ("Dynamic") under *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989); and tort claims against Defendants Mark Larson ("Larson") and Travis Skaggs ("Skaggs") for tortious interference with existing and prospective employment relationships.[1]

---

[1] The Complaint also contains the following claims: disability discrimination under the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. § 12101 *et seq.*; gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.*; FLSA pay violations; and a violation of the Oklahoma Protection of Labor Act, Okla. Stat. tit. 40, § 165.1 *et seq.*

Defendants have filed a timely response [Doc. No. 34] to the Motion, and Plaintiff has replied [Doc. No. 36]. Thus, the Motion is fully briefed and at issue.

## Factual and Procedural Background

Plaintiff brings this employment action against her former employer, Dynamic, and two managerial employees who allegedly made the decision to terminate her employment. Plaintiff claims her termination was motivated by disability and gender discrimination and retaliation for making internal complaints of FLSA violations and Oklahoma tax violations by Dynamic. Plaintiff alleges that Defendants gave pretextual reasons for terminating her employment, that is, an unexcused absence from work and "disgruntled" behavior. *See* Compl. [Doc. No. 1] ¶ 38. Plaintiff also claims that Larson and Skaggs tortiously interfered with her relationship with Dynamic; these claims survived a motion to dismiss. *See* 2/6/23 Order [Doc. No. 18]. Following discovery, Plaintiff filed the instant Motion within the deadline for dispositive motions.

## Standard of Decision

Summary judgment is proper "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id*.

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); *see* Fed. R. Civ. P. 56(c)(1)(A). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### Statement of Facts

Many facts presented by Plaintiff are undisputed. Plaintiff worked for Dynamic from September 28, 2020, to September 28, 2021. She began as a temporary employee but, after six months, accepted a full-time salaried position of administrative assistant offered to her by Dynamic's owner, Larson. Plaintiff was supervised by Dynamic's accountant, Paul Moen ("Moen"), and reported to its controller, Neal Remmers ("Remmers"), who was training to assume Moen's role. In mid-September 2021, Larson and Remmers discussed promoting Plaintiff to an accounting position with a pay raise. In this discussion, they expressed that Plaintiff would need to break "the 8-5 hourly mindset." *See* Pl.'s Mot. Summ. J. at 2, ¶ 6.

Plaintiff was informed of the promotion and her pay raise by Moen and Remmers on Friday afternoon, September 24, 2021. Plaintiff had expected a $10,000 raise but learned it would be $7,000. According to Remmers, this meeting began around 4:00 p.m., and when it ended, Plaintiff complained of unfair treatment, was visibly upset, and went home.[2] Plaintiff has testified that she worked her full shift on September 24, 2021, and Defendants present no evidence to the contrary.

On the following Monday, September 27, 2021, Plaintiff met with Moen and discussed her belief that she was owed overtime pay because Dynamic had misclassified her position for FLSA purposes. Larson and Moen had previously decided that Plaintiff's work qualified for "exempt" status. Moen told Plaintiff he would talk to Skaggs, and Moen then talked to Skaggs and Larson about Plaintiff's complaint that she was not an exempt employee under FLSA. Skaggs has testified that Plaintiff also told Remmers she should qualify for overtime pay and Remmers talked to Skaggs about it. According to Skaggs,

---

[2] Defendants attempt to dispute these facts and thirteen other enumerated facts by stating an evidentiary objection, supported by a copy of Remmers' obituary: "Mr. Remmers is deceased and Plaintiff has no means of authenticating any unsigned memorandum allegedly written by Mr. Remmers" or "Plaintiff has no means of authenticating any alleged conversations or correspondence involving Mr. Remmers." See Defs.' Resp. Br. at 2-4, ¶¶ 7, 8, 9, 20, 23, 24, 25, 26, 27, 28; id. at 6-7, ¶¶ 51, 52, 54, 55. This objection is not otherwise explained in Defendants' brief. It is primarily asserted in response to any fact for which Plaintiff includes a citation to a document created by Remmers. Plaintiff says that Dynamic previously produced this document for a related proceeding before the Oklahoma Employment Security Commission. See Pl.'s Reply Br. at 6-7.

Rule 56(c) permits a party to dispute a fact by showing "an adverse party cannot produce admissible evidence to support the fact" and permits an objection to summary judgment materials on the ground that "a fact cannot be presented in a form that would be admissible in evidence." See Fed. R. Civ. P. 56(c)(1)(b) and (c)(2). Defendants do not satisfy either means of challenging Plaintiff's facts or materials.

Plaintiff was upset on September 27, 2021, about being misclassified as an exempt employee for FLSA purposes and being owed overtime pay and "threatened to turn [Dynamic] in for unfair labor practices."  *See* Pl.'s Mot., Ex. 11 [Doc. No. 32-11].  Skaggs also discussed Plaintiff's comments about her exempt status with Larson on September 27 and discussed them with Plaintiff during her termination meeting.  *See* Pl.'s Mot., Ex. 5 [Doc No. 32-5], Dynamic's Suppl. Resp. to Pl.'s Disc. Req. at 11-12 (Answer to Interrog. No. 16).

Also on September 27, 2021, Plaintiff raised a concern that Dynamic was not complying with Oklahoma tax laws regarding sales and use taxes.  Plaintiff was worried about her potential liability based on the duties of her new accounting position.  Plaintiff understood that she would be submitting reports to the Oklahoma Tax Commission. Remmers told Plaintiff that he would look into it, and he discussed the tax issue with Moen and did some research.  Remmers made reassuring statements to Plaintiff, but Plaintiff remained concerned and said she would go directly to the Oklahoma Tax Commission to ask whether Dynamic was handling the tax issues appropriately.  Skaggs also discussed the tax issue with Moen and Remmers, and discussed "Plaintiff's complaints of 'tax evasion' with Larson and Plaintiff."  *See* Pl.'s Mot., Ex. 11 [Doc. No. 32-11].

Skaggs has characterized Plaintiff's comments to her supervisors on September 27 about improper tax treatment and improper FLSA employee status as "disparagement" of Dynamic.  Skaggs previously testified about this characterization as follows:

> Well, I think, you know, accusing a company of tax evasion is fairly disparaging.  And accusing a company of, you know, improper, you know,

> pay – status as far as exempt or nonexempt and not following those laws and procedures is disparaging as well, yeah.

*See* Pl.'s Mot., Ex. 8 [Doc. No. 32-8], Tr. 30:11-18.  Later in the workday on September 27, Plaintiff began experiencing a migraine headache and went home; it is disputed whether Plaintiff informed Remmers and obtained permission to leave work.

When Plaintiff returned to work the following day on September 28, 2021, Skaggs informed her that Dynamic had terminated her employment.  It is unclear who made the termination decision.  Skaggs has testified that he and Remmers were involved in the decision.  In his testimony, Skaggs explained the bases for his decision were Plaintiff's "leaving her post without permission" on two consecutive workdays, "the negativity that went along with her disparaging statements," and "[t]he negative impact it had on the rest of the employees, because it wasn't just [Plaintiff] having a closed door meeting."  *Id*. at 30:25-31:12.  In discovery responses, however, Skaggs has stated that Larson instructed him to fire Plaintiff, and Larson has taken responsibility for the decision.  Larson has explained his decision as follows:

> I made the decision to terminate Plaintiff on September 27, 2021, after she caused a scene and left work early.  The basis for her termination included having left work several hours early on September 24 and 27, 2021, without using her Paid Time Off ("PTO"), because Plaintiff caused a scene in front of her colleagues about the dollar amount of the raise tied to her promotion, because she would not adhere to Dynamic's limit of two smoke breaks per day after repeated counseling on the same, and disparaged Dynamic to her co-workers including, by, falsely, accusing Dynamic of tax evasion.

Pl.'s Mot., Ex. 4 [Doc. No. 32-4], Larson's Resp. to Pl.'s Disc. Req. at 8 (Answer to Interrog. No. 5); *see also* Pl.'s Mot., Ex. 10 [Doc No. 32-10], Skaggs' Resp. to Pl.'s Disc. Req. at 7-8 (Answer to Interrog. No. 5) (stating same reasons for termination).

Defendants have stated in discovery that Skaggs discussed with Plaintiff during the September 28 termination meeting her "recent inappropriate actions in the workplace," which included excessive smoke breaks, leaving work early, complaining about her pay raise, and "disparaging Dynamic to her co-workers, including claiming Dynamic engaged in tax evasion." *See* Pl.'s Mot., Ex. 10, Skaggs' Resp. to Pl.'s Disc. Req. at 7 (Answer to Interrog. No. 4). They also discussed in the September 28 meeting "Plaintiff's comments about her exempt status." *See* Pl.'s Mot., Ex. 5, Dynamic's Suppl. Resp. to Pl.'s Disc. Req. at 11-12 (Answer to Interrog. No. 16).

**Plaintiff's Motion**

Plaintiff contends the undisputed facts establish the termination of her employment was retaliatory, that is, a motivating factor in the decision was her complaint about FLSA violations. Similarly, Plaintiff contends the undisputed facts establish her discharge from employment violated public policy, that is, a substantial factor in the decision was her complaints about state tax law violations. As to Plaintiff's tortious interference claims, she contends these same facts establish that Larson and Skaggs are personally liable for her termination because, in deciding to terminate her employment, Larson and Skaggs were not acting in Dynamic's interest but, instead, were motivated by their own personal hostility toward Plaintiff's complaints of unlawful activity.

**Discussion**

**A.     FLSA Retaliation Claim Against All Defendants**

Plaintiff asserts that the undisputed facts establish all elements of a FLSA retaliation claim under 29 U.S.C. § 215(a)(3). *See* Pl.'s Mot. at 11. In particular, Plaintiff contends

7

the statements of decisionmakers showing retaliatory animus and the timing of her termination demonstrate a causal connection between her protected FLSA activity and the termination of her employment and, therefore, prove her termination was motivated by retaliation. Plaintiff argues that Defendants' statements regarding her termination and admission that her exempt status was discussed in her termination meeting are direct evidence that her FLSA complaint was a motivating factor in the decision. Where all elements of retaliatory discharge are established, Plaintiff asserts that she is entitled to summary judgment on the issue of Defendants' liability for this claim.

Defendants oppose Plaintiff's Motion on the FLSA retaliation claim by arguing that Plaintiff cannot prove an overtime wage violation occurred. *See* Defs.' Resp. Br. at 11-12. This argument is misguided because such proof is not an element of a retaliation claim. Protected activity under § 215(a)(3) includes an employee's complaint to her employer of a belief that a wage violation has occurred. *See McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1486 (10th Cir. 1996) (Section 215(a)(3) "protects employees who articulate a good faith, though unproven, belief that the employer is violating their rights under the FLSA," and "applies to the unofficial assertion of rights through complaints at work"); *see also Acosta v. Foreclosure Connection, Inc.*, 903 F.3d 1132, 1135 (10th Cir. 2018). (FLSA's "anti-retaliation provision does not require an actual violation to be proved").

Defendants also argue that, although one reason for Plaintiff's termination was her complaint about "pay," this refers to Plaintiff's dissatisfaction with the amount of her raise and not unpaid overtime work. *See* Defs.' Resp. Br. at 12 ("In reality, Plaintiff's complaints were about her raise."). This argument lacks a citation of factual support in the record.

8

Assuming Defendants are relying on their answers to interrogatories, which cast the decision as being based on Plaintiff's negative reaction to her pay raise, the undisputed facts also show that Plaintiff complained at the time of her termination of being classified as an exempt employee and not receiving overtime pay. Skaggs has testified under oath that Plaintiff's disparagement of Dynamic resulting in her termination included her complaint of FLSA violations. Defendants have also admitted that Skaggs discussed with Plaintiff during her termination meeting her comments about FLSA exempt status.

On the record presented, the Court finds that the undisputed facts show Plaintiff's FLSA complaint was a factor in the decision to terminate her employment with Dynamic. The Court further finds Plaintiff has presented direct evidence of retaliation; statements of a person involved in Plaintiff's termination establish a direct link between the termination decision and Plaintiff's complaint of an FLSA violation. *See*, *e.g.*, *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1226-27 (10th Cir. 2008) (direct evidence is evidence that, if believed, proves retaliatory motivation, such as statements by decisionmakers that show retaliatory animus). In addition to evidence of FLSA retaliation, however, the undisputed facts also show the termination decision was based on Plaintiff's complaint that Dynamic was violating state tax laws. In other words, Plaintiff also has direct evidence to support a state-law retaliation claim based on other allegedly protected activity, discussed *infra*.

The Tenth Circuit has explained the proper analysis for FLSA claims of retaliatory discharge under 29 U.S.C. § 215(a)(3) as follows:

> When the immediate cause or motivating factor of a discharge is the employee's assertion of statutory rights, the discharge is discriminatory under § 215(a)(3) whether or not other grounds for discharge exist. If

9

> retaliation is not the motivating factor, then the discharge is not unlawful. The motivating factor test is equivalent to a "but for" inquiry – a discharge is unlawful under § 215(a)(3) only if it would not have occurred but for the retaliatory intent.

*McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1483 (10th Cir. 1996) (internal quotations and citations omitted). "[I]f a jury finds that a FLSA retaliation plaintiff would have been terminated regardless of her FLSA activity, then it is required to find in favor of the defendants." *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997) (quoting *McKenzie*, 94 F.3d at 1484). Here, given Plaintiff's evidence of two distinct retaliatory motivations for her termination, the Court finds that reasonable jurors could reach different conclusions on the question of whether Plaintiff's FLSA protected activity was the motivating factor under the but-for standard, that is, whether she would have been discharged regardless of her FLSA complaint.

Further, although Plaintiff seeks to hold all defendants liable for FLSA retaliation, Plaintiff does not address in her Motion the issue of each defendant's liability. The Tenth Circuit has held that FLSA's anti-retaliation provision applies to "any person" who discriminates against an employee because the employee has filed a complaint and thus it is not limited to actual employers covered by FLSA. *See Acosta v. Foreclosure Connection, Inc.*, 903 F.3d 1132, 1136 (10th Cir. 2018). However, the Tenth Circuit has not decided the question of when an individual supervisor or manager can be held liable. *See Diaz v. Longcore*, 751 F. App'x 755, 759 (6th Cir. 2018) (liability for FLSA retaliation extends only to "a person acting on behalf of the actual employer . . . with respect to the employment relationship"); *see also Garner v. Int'l Union, United Auto. Workers of Am.*,

10

No. 21-CV-01860-CMA-NYW, 2022 WL 860613, *7 (D. Colo. Mar. 23, 2022), (magistrate judge's report and recommendation), *adopted*, 2022 WL 1102526 (D. Colo. Apr. 13, 2022) (noting "lack of binding authority establishing that a person may sue his or her labor organization for retaliation under the FLSA" and surveying case law regarding non-employer liability). Considering that Plaintiff's Motion omits the individual liability of Skaggs and Larsen for FLSA retaliation, the Court cannot grant summary judgment against them on Plaintiff's FLSA retaliation claim on the existing record.

For these reasons, the Court finds that Plaintiff has not shown she is entitled to summary judgment on her FLSA retaliation claim.

**B.    *Burk* Wrongful Discharge Claim Against Dynamic**

Plaintiff also asserts that the undisputed facts show her internal complaint of tax evasion was a significant factor in Dynamic's termination of her employment and, therefore, establish Dynamic's liability for the public policy tort recognized in *Burk*. Plaintiff contends she was acting consistent with a clear public policy by exposing "tax fraud and the crime associated therewith" and "refus[ing] to participate in illegal activity." *See* Pl.'s Mot. at 17 (citing Okla. Stat. tit. 68, § 246, which criminalizes verification of a false report to the Oklahoma Tax Commission). Plaintiff cites case law articulating a public policy "to encourage the disclosure of criminal activity" and holding that reporting fraud in the use of public funds will support a wrongful discharge claim under *Burk*. *See id*. at 17-18 (quoting *Darrow v. Integris Health, Inc.*, 176 P.3d 1204, 1215 n.50 (Okla. 2008), and citing *Booth v. Home Depot, U.S.A., Inc.*, 504 P.3d 1153, 1156 (Okla. 2022)).

In opposition to the Motion, Dynamic argues that Plaintiff was an at-will employee and "the *Burk* exception . . . does not apply here." *See* Defs.' Resp. Br. at 13. Dynamic contends Plaintiff was not discharged "for refusing to perform an illegal activity or for exposing some wrongdoing by Dynamic . . . [because] there was no illegal activity associated with her role, and there was no illegality to expose." *Id*. Dynamic relies on an October 2021 email communication from an employee of the Oklahoma Tax Commission relating a nonprecedential ruling consistent with Dynamic's position that no consumer use taxes are owed. *See* Defs.' Resp. Br., Ex. 3 [Doc. No. 34-3].

The Court again finds that Dynamic is misguided to oppose Plaintiff's retaliation claim by arguing the validity of its position regarding Oklahoma tax law. Dynamic cites no legal authority for the proposition that an element of a *Burk* claim is proof that the employer violated the law. To prevail on her wrongful discharge claim, however, Plaintiff must prove that she engaged in protected activity, that is, conduct "consistent with a clear and compelling public policy" that the law recognizes as warranting protection. *See Burk*, 770 P.2d at 29; *see also Darrow*, 176 P.3d at 1214 (employee's report of falsified records must come "within the scope of protected activity that has a public impact").

Here, the Court finds that Plaintiff has failed to establish as a matter of law that she engaged in protected activity under *Burk*. Contrary to Plaintiff's suggestion that exposing criminal activity is necessarily protected, the Oklahoma Supreme Court has "held that reporting criminal activity is not infused with the necessary clear and compelling public policy sufficient to protect the employee from discharge under the tort established in *Burk*." *Booth*, 504 P.3d at 1156. The court explained: "If a criminal statute is violated and the

employee reports the crime only to be fired, this Court will not find that the Legislature has created public policy unless the public interest for reporting the crime is completely entwined with the criminal law." *Id.* Plaintiff cites an Oklahoma tax law that makes it a felony to verify a false report or false return to the Oklahoma Tax Commission. *See* Pl.'s Mot. at 17 (citing Okla. Stat. tit. 68, § 246). Plaintiff does not explain how this statute is implicated by Dynamic's nonpayment of sales or use taxes.

Turning to a possible public interest in enforcing tax obligations, Plaintiff clearly complained about Dynamic's nonpayment of taxes; Defendants characterized her conduct as accusing Dynamic of tax evasion. A careful examination of the summary judgment record shows, however, that Plaintiff engaged in the following conduct: she expressed a concern that Dynamic was violating Oklahoma law requiring payment of sales and use taxes; she questioned whether Dynamic's management had adequately considered the issue; and she threatened to ask the Oklahoma Tax Commission for an answer. These facts do not make clear whether Plaintiff did more than question Dynamic's nonpayment of taxes. Plaintiff does not explain the basis of any belief that Dynamic was evading a tax obligation, such as some specialized knowledge of Oklahoma tax law. To establish protected activity, Plaintiff must show more than a difference of "opinion about the way an organization should be managed" or "a rumor of wrongdoing when they have no idea if the rumor is true." *See Barker v. State Ins. Fund*, 40 P.3d 463, 470-71 (Okla. 2001).

In short, on the record presented, the Court cannot say whether Plaintiff engaged in protected activity within the meaning of *Burk*. Therefore, the Court finds that Plaintiff has not shown she is entitled to summary judgment on her wrongful discharge claim.

## C. Tortious Interference Claims Against Larson and Skaggs

Finally, Plaintiff asserts that a manager's termination of an employee for reasons that violate public policy and the employee's legally protected rights amounts to tortious interference with the employment relationship. She argues that a person who acts for such reasons cannot establish any justification, privilege, or excuse for interfering with the relationship. *See* Reply Br. at 10 (quoting *Mason v. Okla. Turnpike Auth.*, 115 F.3d 1442, 1454 (10th Cir. 1997), *overruled on other grounds*, *TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011)). Of course, Larson and Skaggs deny acting for unlawful reasons; they assert that removing Plaintiff from the workplace furthered Dynamic's interests and there are no facts to suggest they acted "in furtherance of their own personal interests" or "benefitted individually" from Plaintiff's termination. *See* Defs.' Resp. Br. at 13-14.

Plaintiff's position, based on *Mason*, is that proof of retaliatory intent by Larson and Skaggs in making the termination decision establishes tortious interference as a matter of law. Plaintiff quotes the following passage from the Tenth Circuit's opinion in *Mason*:

> When a corporate officer or director seeks the termination of a fellow employee for reasons that violate both public policy and the employee's constitutional rights, that officer or director does not act with an honest intent or for a bona fide organizational purpose, and the factors suggested by the Restatement weigh heavily in favor of finding that such interference is not justified. *See, e.g., Petroskey v. Lommen, Nelson, Cole, & Stageberg*, 847 F.Supp. 1437, 1450 (D. Minn. 1994), *aff'd*, 40 F.3d 278 (8th Cir.1994) (noting that an employer's officer or agent may be liable for tortious interference if the motivation underlying the interference was sufficiently improper to establish a claim against the employer for wrongful discharge).

14

*Mason*, 115 F.3d at 1454.[3]  Notably, however, the court in *Mason* simply found that an individual defendant's status as a member of the employer's governing board did not preclude a tortious interference claim against him, and that the trial evidence was sufficient to support the jury's finding that the board member, who participated in and encouraged the plaintiff's wrongful discharge, was liable for tortious interference.  The court did not hold, as apparently argued by Plaintiff, that every employee who proves a wrongful discharge claim is automatically entitled to a finding that the officers or managers who participated in the unlawful decision committed tortious interference.

In this case, the Court has not found that summary judgment is proper on any retaliation or wrongful discharge claim.  Thus, without a determination that Plaintiff was terminated for unlawful reasons, the Court cannot say that any tortious interference was committed by either Larson or Skaggs, even if Plaintiff's view of the law were correct.[4]  More importantly, the Court is not convinced that Plaintiff correctly states Oklahoma law regarding tortious interference claims against managerial employees in wrongful discharge cases.  She has provided no legal authority, other than *Mason*, to support her expansive view, and independent research reveals that other courts have rejected it.  *See, e.g., Grillot v. Oklahoma ex rel. Univ. of Okla. Bd. of Regents*, No. CIV-19-0241-F, 2019 WL 3558183,

---

[3] In *Mason*, the Tenth Circuit addressed an unanswered question of Oklahoma law: "whether a corporate officer, director or other employee can be held liable for tortiously interfering in a corporate contract." *Id*. at 1453.  The court reached an affirmative answer, with which the Oklahoma Supreme Court later agreed.  *See Martin v. Johnson*, 975 P.2d 889, 896 (Okla. 1998).

[4] Of course, the Court also could not say that both Larson and Skaggs are responsible for any tortious interference that occurred because the undisputed facts do not establish what role Skaggs played in the termination decision.

at *4 (W.D. Okla. Aug. 5, 2019); *Graham v. Cargill, Inc.*, No. CIV-10-0977-HE, 2011 WL 5429316, *4 (W.D. Okla. Nov. 9, 2011).  Therefore, the Court finds that Plaintiff has not shown that summary judgment on her tortious interference claims against Larson and Skaggs is proper.

## Conclusion

For these reasons, the Court finds that Plaintiff has not established that she is entitled to summary judgment on any claim addressed by her Motion.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Partial Summary Judgment [Doc. No. 32] is **DENIED**.  This case will proceed to trial on all claims stated in the Complaint.

**IT IS SO ORDERED** this 13th day of May, 2024.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge